UNITED STATES DISTRICT COURT         SOUTHERN DISTRICT OF TEXAS

RIVIANA FOODS, INC.,                §
                                    §
            Plaintiff,              §
                                    §
versus                              §         CIVIL ACTION H-05-488
                                    §
                                    §
LOWCARB SUCCESS, INC.,              §
                                    §
            Defendant.              §

# Opinion on Contract Claim & Remedy

1.  *Introduction.*

    After a Riviana sued LowCarb Success for trademark infringement, they settled. LowCarb Success concedes that it has used a mark that the settlement did not allow, but it says that the contract should not be enforced.  Riviana will prevail on its contract claim.

2.  *Background.*

    Riviana Foods, Inc., has been selling rice and rice mixes under its Success trademark since 1970.  LowCarb Success, Inc., has been selling low-carbohydrate cereals, dry-grain mixes, and snacks since 2001.  In 2002, LowCarb attempted to register its mark. LowCarb's mark emphasized the word Success – appearing in bold, uppercase type. *LowCarb* was angled on top of Success, in a less prominent typeface of lowercase letters. Riviana successfully opposed the registration and sued LowCarb.

    In 2004, the companies settled.  LowCarb agreed never to use Success in a mark without *LowCarb* immediately preceding it on the same line and in the same color, typeface, and size as *Success*.  LowCarb agreed to use this mark only.

    Within months of the agreement, LowCarb began using another *Success* mark. This one was *LC Success*.  The words are all in the same type and size.

3. *Claims.*

In excessive pleading, Riviana now sues for trademark infringement, breach-of-contract, injury to business reputation, dilution, unfair competition, and a determination of right to register. It has moved for partial summary judgment on its breach-of-contract claim and seeks specific performance on the agreement.

4. *Breach of Contract.*

LowCarb concedes that its new mark is not permitted by the contract, but it says that it breached the contract for economic reasons. Most breaches are economically based, either as a consequence of earlier decisions or as a conscious, efficient breach. LowCarb did not explain its economic analysis. It only says that, if the court makes it comply with the contract, it will lose a lot of money from having to reprint new packaging for its product and close its business until that packaging arrives. This neither explains nor justifies the breach.

LowCarb has changed its mind. It freely chose to limit its use of Success to avoid an uncertain future. By it, LowCarb gained the benefit of avoiding suit and of having current permission from Riviana to use its second choice of a mark. Riviana suggests that LowCarb breached its contract because it feared the Food and Drug Administration's restriction of the term "Low Carb." LowCarb was aware of that risk when it agreed to the terms of the settlement. See Riviana's Mot. for Summ. J., dkt. 10, Letter from LowCarb's Counsel, ex. G. It must bear the consequences of that risk now.

5. *Harm.*

LowCarb contends that its breach was harmless. It confuses the occasion for enforcing a contract with the elements of an original trademark claim. Part of what Riviana avoided by its acceptance of one particular version of LowCarb Success was that it did not have to go to the expense and risk of litigating the original LowCarb mark or the modified one. The precise monetary value of that savings is impossible to ascertain. In addition to the costs of litigation, Riviana would have had to divert its entrepreneurial energies to lawsuits instead of selling rice.

Agreements of indirect, secondary benefits are enforceable, like the commitments of condominium owners not to redecorate the outside of their units without permission. The economic value is as indisputable as it is unquantifiable.

A trademark is a state-sanctioned monopoly that prohibits everyone but the owner from using the registered mark. Riviana has the protected right to exclude others from using marks confusingly similar to its own. LowCarb expanded the monopoly by agreement; it limited itself to one semi-similar trademark. By this agreement, it knew what Riviana would not contest – a valuable benefit – and it avoided the costs and damages for its infringement.

6.   *Confusion.*

If Riviana were being arbitrarily idiosyncratic, LowCarb might have fair refuge in equity, but the new mark is facially worse that the original mimicry. Riviana and LowCarb sell their products to the same stores. LowCarb's products are similar to Riviana's. Both companies sell consumer-packaged, home-preparation food stuffs.

The *LC Success* mark is deceptively similar to Riviana's SUCCESS mark. Like in its original mark, LowCarb has made the most significant visual element of its new mark the word Success. *LC* is not part of the culture of American consumerism. In the future, it may become common currency, and it may be understood among food and diet faddists. Currently, though, LC has no meaning. As an illustration, *LC Coca Cola* would be understood first as *Coke* and only secondarily as anything else.

7.   *Specific Performance.*

LowCarb says that specific performance is not necessary because Riviana could have an injunction. Both enforcement and injunction are equitable remedies; they both would serve to compel the performance of the duties assumed by LowCarb in its contract with Riviana.

LowCarb suggests no remedy at law that would be adequate. It has not attempted to tender a payment that would compensate Riviana for its lost performance. Both parties sought to avoid these transaction costs of a legal wrangle over marks. Both conceded

something.  Now, LowCarb wants to impose the avoided costs on Riviana as a price of enforcing the agreement.  The law is not that weird.

LowCarb says that an order barring it from using LC Success is adequate and, conversely, that holding it to its agreement is too severe.  Riviana's bargain was not that LowCarb would serially adopt competing marks and then abandon them.  Its benefit was that LowCarb would use only one Success mark – or none at all.  LowCarb's suggested approach would force Riviana to contest separately each potentially confusing LowCarb mark.  This position by LowCarb illustrates that Riviana has met the equitable requirement that LowCarb is likely to repeat its breach, making both a broad injunction and specific performance proper.

8.   *Conclusion*

LowCarb breached its contract with Riviana. It has offered no legally cognizable defense.  LowCarb's preference for a limited injunction is a dodge to allow it to repeat its game of seeing how close it can come to Riviana's mark and goodwill.

On its motion for partial summary judgment, Riviana will prevail, and it will have performance by LowCarb.

Signed August 30, 2005, at Houston, Texas.

_____
Lynn N. Hughes   USDJ
United States District Judge